# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-1867V**

| | |
|---|---|
| KATHRYN KIRCHNER,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 6, 2026 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Alexa Roggenkamp, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On December 19, 2022, Kathryn Kirchner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 20, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent opposed compensation, arguing that Petitioner had not established that she received the subject vaccine, or that her symptoms were limited to the shoulder

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

in which the vaccine was administered (ECF No. 21). The parties have now briefed the issues (ECF Nos. 25, 27, 28). For the reasons set forth below, I determine that the record preponderantly supports a finding that Petitioner likely received a flu vaccine in her right shoulder on October 20, 2020, and that her symptoms were more likely than not primarily limited to her right (vaccinated) shoulder.

## I. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

Petitioner must first establish by a preponderance of the evidence that he or she "received a vaccine set forth in the Vaccine Injury Table." § 300aa-11(c)(1)(A). A special master shall assess "the record as a whole" and may not "find that a petitioner received a vaccine 'based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.' " *Rich v. Sec'y of Health & Human Servs.*, No. 12–742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013) (§ 300aa–13(a)(1)).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence to prove administration of a vaccine, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous documentary proof of a vaccination ... does not necessarily bar recovery"). Corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Human Servs*., No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Figueroa v. Sec'y of Health & Human Servs*., No. 10-705V, 2014 WL 6819494, at *4 (Fed. Cl. Spec. Mstr. Nov. 7, 2014) (finding sufficient proof of vaccination where subsequent medical records documented that petitioner consistently reported receiving the subject flu vaccination); *Beckner v. Sec'y of Health & Human Servs*., No. 11-668V, 2013 WL 3353993, at *8 (Fed. Cl. Spec. Mstr. Apr. 25, 2013) (finding adequate proof of vaccination based on medical record a month purported vaccination in which claimant reported receiving the vaccine for the purpose of facilitating diagnosis and treatment and stating that "the vaccination was received in such close temporal proximity to petitioner's admission that misremembering is unlikely").

To establish a Table SIRVA, a claimant must demonstrate that they have no prior history of pain, inflammation, or dysfunction that would explain their post-vaccination

symptoms and findings; their pain occurred within 48 hours of vaccine administration; their pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and no other condition or abnormality is present that would explain their symptoms. 42 C.F.R. § 100.3(c)(10).

## II. Relevant Factual Evidence

Petitioner asserts that she received a flu vaccine on October 20, 2020, at her place of employment. Petition at 1. However, despite repeated efforts, she has been unable to obtain the vaccination record of this event.[3]

Thirteen days later (November 2, 2020), Petitioner saw her primary care provider ("PCP") reporting pain (which she rated nine out of ten) in her right upper arm and right fingers "since [she] received a flu vaccine." Ex. 2 at 158. She also reported that her right hand felt "numb and cold and pressure feeling." *Id*. On examination, Petitioner exhibited decreased range of motion ("ROM") and strength. *Id*. at 159. Her PCP explained that the vaccine had been inadvertently injected into an area beside the muscle, causing local irritation. *Id*. at 158. She was given medication and referred for physical therapy ("PT"). *Id*.

The following day (November 3, 2020), Petitioner underwent a PT evaluation of her right shoulder. Ex. 3 at 3. She reported "significant pain" with movement and sleep disruption after receiving a flu vaccine. *Id*. The record lists onset as having occurred on October 22, 2020. *Id*. On examination, she exhibited active and passive ROM deficits.[4] *Id*. at 4. Petitioner continued PT until she was discharged on January 28, 2021. *Id*. at 3-61.

Petitioner consulted an orthopedist on March 16, 2021, for evaluation of right shoulder pain that she reported began on October 21, 2020, explaining that she "had a flu injection and afterwards her shoulder was very painful." Ex. 4 at 3. Her current pain was two out of ten, ranging to ten out of ten at worst. *Id*. The pain radiated to her arm, elbow, wrist, and hand. *Id*. The orthopedist diagnosed her with subacromial bursitis of the

---

[3] Petitioner has not filed an affidavit detailing the efforts made to obtain this record and the reasons for its unavailability, as required by Vaccine Rule 2(c)(2)(B)(i) and as specifically ordered in an October 3, 2023 scheduling order. Although Respondent raised this concern in his response, Petitioner did not thereafter file an affidavit or address the matter in her reply. Counsel should ensure that such evidence is filed in future cases if required by rules or court order.

[4] Petitioner's right shoulder active ROM was 40 degrees in flexion (normal 180), 30 degrees in extension (normal 50-60), 30 degrees in abduction (normal is 180), and ten degrees in external rotation (normal is 90), and normal internal rotation of 70 degrees. Ex. 3 at 4. Her passive ROM was 100 degrees in flexion, 90 degrees in abduction, and 20 degrees in external rotation, with normal extension and internal rotation. *Id*.

right shoulder, explaining that it was "likely that her flu vaccine was injected into her bursa." *Id*. at 5. A steroid injection was administered to Petitioner's right shoulder. *Id*. Petitioner followed up with the orthopedist over the following months. *Id*. at 12-50. At a June 28, 2021 appointment, she reported immediate pain after vaccination, including in her axilla and trapezius area, and persisting numbness in her fourth and fifth fingers. *Id*. at 30.

Petitioner has submitted a declaration in support of her claim. Ex. 8. She states that she and a coworker (David Snow) went to the office of her employer's nurse manager to receive flu vaccines on October 20, 2020. *Id*. at ¶ 2. She did not sign a consent form or receive any documentation related to the vaccination. *Id*. at ¶¶ 3, 4. The vaccination was "very painful," and the pain persisted afterward. *Id*. at ¶ 3. The next day, she and David complained to each other of pain at the injection sites. *Id*. at ¶ 6.

Mr. Snow submitted a declaration in support of her claim. Ex. 9. He corroborates Petitioner's statement that they went to the nurse's office at work on October 20, 2020 to receive flu vaccines, and states that neither of them signed vaccine consent forms or received documentation of the vaccination. *Id*. at ¶¶ 2, 3. He confirms that the following day, they complained to each other about pain at the injection sites. *Id*. at ¶ 4. They both continued to experience pain for several weeks, although his pain resolved after a month. *Id*.

Petitioner has also filed evidence substantiating her efforts to obtain a vaccination record. On February 16, 2021, she sent an email to Tracy Treece of Health Care Associates ("HCA") requesting documentation of her flu shot. Ex. 11 at 13. Petitioner's email signature indicates that she is the Executive Director of Sentinel Pointe Retirement Village. *Id*. Although Petitioner does not explain the relationship between HCA and Sentinel Pointe, presumably they are related entities, given that Petitioner asked an HCA employee for documentation of a flu vaccine she asserts was administered at work.

On the same day, Lenny Treece of HCA responded that they did not have any documents because the nurse "stated that you had 'forgotten your insurance card' and [was] unsure if we gave the paperwork to you or if we didn't finish it as we were waiting on your insurance info." Ex. 11 at 1.

Petitioner further filed emails between her and Neil Kassuba of Cincinnati Insurance Company (which Petitioner's motion asserts is HCA's insurer). Petitioner's Motion, filed April 21, 2025, at *5 (ECF No. 25) ("Mot."). Mr. Kassuba states that they completed an investigation and determined that HCA had not acted negligently, and that Petitioner "did review the influenza consent form prior to receiving the vaccination, where you assumed all risk of possible complications." Ex. 11 at 8. Petitioner replied requesting the consent form, and Mr. Kassuba responded that it was his understanding that Petitioner "may have taken the immunization consent form with you to complete and return with your health insurance information for billing at a later time." *Id*. at 11.

Petitioner filed an unsigned statement from Lenny Treece of HCA dated March 6, 2023, stating the following:

> Vaccine Administration record – HCA/CCG never was given one from Kathryn Kirchner
> Vaccine consent – Misplaced or Mrs. Kirchner took with her
> Date of vaccination – 10-20-2020

Ex. 10 at 1. This statement also documents the manufacturer and lot number of the vaccine, and the physical address where the vaccine was administered.

Finally, Petitioner submitted screenshots of photographs dated October 21, 2020 (Ex. 1 at 1-2), which Petitioner asserts show the injection site. Mot. at *4.

## III. Parties' Arguments

Petitioner asserts that she has filed contemporaneous photographs and medical records supporting a finding that she received a flu vaccine on October 20, 2020. Mot. at *8. And she asserts that her employer and employer's insurer consistently referred to the occurrence of the subject vaccination on October 20, 2020. *Id*. Petitioner asserts that the fact that a vaccination occurred does not need to be proven by medical records or medical opinion, nor must there be contemporaneous documentation. *Id*. at *9.

Petitioner emphasizes that she sought care soon after vaccination, and consistently related her shoulder pain to that vaccination. Mot. at *9. These statements were made for the purpose of obtaining medical treatment, enhancing their reliability, and are bolstered by testimonial statements. *Id*. As such, she asserts that it is "far more likely" that she received the subject vaccine on October 20, 2020, as alleged, than that she did not. *Id*. She adds that, although she initially reported pain in her right fingers and right-hand numbness, coldness, and a "pressure feeling," these symptoms do not prevent her from satisfying the QAI. *Id*. at *10. She asserts that her pain occurred primarily in her shoulder, and that symptoms extending to adjacent parts of the body are not disqualifying. *Id*.

Respondent argues that Petitioner has not established receipt of a flu vaccine on October 20, 2020, as alleged. Response, filed June 23, 2025, at *6 (ECF No. 27) ("Resp."). Respondent acknowledges that contemporaneous documentation of a vaccination from a health care provider is not an absolute requirement. Resp. at *6. However, he points out that Vaccine Rule 2(c)(2)(B)(i) "gives the opportunity to meet her burden without medical records if she includes an 'affidavit detailing the efforts made to obtain such records and the reasons for their unavailability" – which Petitioner has not done. *Id*. at *6, 8. And in any event, a claimant must substantiate that vaccination occurred, even if records thereof are not available. *Id*. at *6.

Respondent contends that Petitioner has not preponderantly established that she received a flu vaccine on October 20, 2020, or that such vaccine was administered in her right arm. Resp. at *7. He emphasizes that she has not provided an affidavit from the health care provider who allegedly administered the vaccine, and asserts that "email correspondence petitioner did provide does not have the same verisimilitude as a medical record or insurance statement," particularly because the correspondence was not from the person who Petitioner alleges administered the vaccine or "anyone else with direct knowledge of petitioner's alleged vaccination." *Id*. at *7-8. And the emails suggest that Petitioner took her vaccination paperwork with her, while Petitioner asserts she did not receive any paperwork. *Id*. at *8.

Finally, Respondent asserts that throughout her treatment course, Petitioner repeatedly mentioned pain and neurologic symptoms including numbness and coldness outside of her shoulder and symptoms in her elbow, wrist, and hand. Resp. at *9.

On reply, Petitioner asserts that this is "clearly a case of misplaced documentation/careless recordkeeping." Petitioner's Reply, filed July 7, 2025, at *2 (ECF No. 28) ("Reply"). Although some records suggest that Petitioner may have taken with her documentation of the vaccination, Petitioner emphasizes that the vaccine administrator herself could not recall whether a vaccine consent form was completed. Reply at *2.

## IV. Factual Findings

### a. Proof of Vaccination

Petitioner has established that, more likely than not, she received a flu vaccine in her right arm on October 20, 2020. Although she has not filed a consent form or vaccination record directly corroborating the fact of vaccine administration, the remaining evidence supports the finding that the subject vaccine was likely so administered. And no evidence (beyond the lack of a vaccination record) suggests that she did not receive the subject vaccine in her right arm on that date.

Petitioner has filed numerous contemporaneous medical records, beginning less than two weeks after she states she received the vaccine, relating her right shoulder pain to an October 2020 vaccination. Ex. 2 at 158. Thereafter, she consistently described her shoulder pain to treaters as having begun after vaccination. Ex. 3 at 3; Ex. 4 at 3. I have previously found comparable evidence compelling. *See Hawkins v. Sec'y of Health & Human Servs.*, No. 23-0098V, 2025 WL 1604396 (Fed. Cl. Spec. Mstr. May 6, 2025) (finding preponderant evidence of receipt of vaccine despite lack of vaccination record where claimant sought care five days after vaccination complaining of shoulder pain since receiving the vaccine five days earlier, and thereafter consistently described his pain as beginning with vaccination); *Cressman v. Sec'y of Health & Human Servs.*, No. 23-552V,

2025 WL 4660780 (Fed. Cl. Spec. Mstr. Aug. 25, 2025) (finding claimant who lacked vaccine administration record had preponderantly established receipt of vaccine where she sought shoulder treatment one month after vaccination attributing her pain to a vaccine received the prior month, and thereafter consistently related her pain to vaccination).

Petitioner has also provided testimonial support from herself and a coworker who states he was there when she received the vaccine. Exs. 8, 9. Petitioner's email evidence and unsigned statement (Exs. 10-12) would be more persuasive if they were supported by an affidavit of unavailability pursuant to Vaccine Rule 2(c)(2)(B)(i) and/or the roles of the persons and companies listed therein were explained. As filed, they are of limited value.

As to the situs of vaccine administration, several records support the finding that the flu vaccine was administered in Petitioner's right shoulder. Although there is no vaccination record, Petitioner sought care less than two weeks after vaccination, relating her right shoulder pain to receipt of the vaccine. Ex. 2 at 158. And thereafter, she consistently stated that her right arm pain began with vaccination. Ex. 3 at 3; Ex. 4 at 3. And no records suggest a different situs.

**b. Whether Petitioner's Symptoms were Limited to the Vaccinated Shoulder**

Respondent focuses on Petitioner's report of symptoms in her elbow, arm, hand, and fingers. I have previously found, however, that references to symptoms that originate in a claimant's shoulder, but result in incidental/stray reports of symptoms elsewhere, do not necessarily prevent satisfaction of this SIRVA element. *See Valdez v. Sec'y of Health & Human Servs*., No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original). Rather, the issue is whether the claimant's predominant concerns, and related treatment, focus on the shoulder.

In this case, Petitioner consistently complained of right shoulder pain. While she at times also reported symptoms in adjacent parts of her body, her primary complaint and the focus of her treaters was her right shoulder. I find that Petitioner's symptoms were likely primarily limited to her right shoulder.

**Scheduling Order**

- **Petitioner shall file, by no later than Friday, November 20, 2026, a status report providing an update on the parties' discussions, including whether and when Petitioner has served a demand and whether there are any updated medical records.**

- **Respondent shall file, by no later than Friday, November 20, 2026, a status report indicating whether he is willing to engage in tentative discussions concerning settlement or proffer or remains opposed to negotiating at this time; and stating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master